IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rosemary A. Hammonds,<br><br>      Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>      Defendant. | Civil Action No. 8:09-172-MBS-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Rosemary A. Hammonds, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") under the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was forty-four years of age on March 17, 2005, her alleged disability onset date, and forty-seven years old at the time of her first hearing. (R. at 55.) The plaintiff has a high school education and has past relevant work as a tie-end operator and weaver. (R. at 70.) She alleges she became disabled due to emphysema, high blood pressure, anxiety, depression, and high cholesterol. (R. at 17, 69.)

The plaintiff applied for disability insurance benefits on March 22, 2005. (R. at 55.) Her application was denied initially and upon reconsideration. Following an administrative hearing on August 17, 2006 (R. at 452-76), the Administrative Law Judge (ALJ) issued an unfavorable decision. The plaintiff requested a review of the ALJ's decision, and on July

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

25, 2007, the Appeals Council vacated the ALJ's decision and remanded the case. (R. at 312-15.) A supplemental hearing was held on October 2, 2007, and the ALJ again issued an unfavorable decision (R. at 17-29.) The Appeals Council denied the plaintiff's request for review of the hearing decision, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. at 8-12.)

The ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on January 1, 2005 [sic], the alleged date of disability onset, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged date of disability onset.

3. The medical evidence establishes that the claimant has "severe" pulmonary disease, allergies and venous insufficiency, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, subpart P, Regulations No. 4. Additionally, for the reasons discussed in the body of this decision the claimant has not met her burden of establishing that she has any other "severe" impairment.

4. For the reasons discussed in the body of this decision, the testimony regarding the severity of the claimant's impairments and resulting functional limitations was not persuasive.

5. The claimant retains the residual functional capacity to perform "sedentary" work subject to the additional limitations discussed in the body of this decision.

6. The claimant is unable to perform her past relevant work.

7. The claimant is a "younger individual" and she has a high school education.

8. Based on an exertional capacity for "sedentary" work, and the claimant's age, education, and work experience, section 404.1569 and Rule 201.21, Table No. 1, Appendix 2, Subpart P. Regulations No. 4 would direct a conclusion of "not disabled."

9. Even if the claimant's non-exertional limitations do not allow her to perform the full range of "sedentary" work, using the above cited Rule in conjunction with the credible testimony of the vocational expert, a finding that there are a significant number of jobs in the national economy which the claimant could perform is warranted. Examples of such jobs are telephone information clerk and surveillance system monitor.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision 20 CFR 404.1520(f).

2

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

3

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) finding certain of her impairments non-severe; (2) failing to consider the combined effect of her impairments; (3) failing to accord the

4

opinions of her treating physician controling weight; and (4) failing to include all of her limitations in the hypothetical to the Vocational Expert. The Court will address each alleged error in turn.

**I.     Severe Impairments**

The plaintiff first complains that the ALJ erred in concluding that her depression and anxiety were not "severe" impairments. To establish a severe impairment, a claimant must provide medical evidence that her impairments significantly limit her ability to perform "basic work activities." *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 146 n.5 (1987) ("An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"; it is Plaintiff's burden to show she has a severe impairment); 20 C.F.R § 404.1520(c).  Social Security Ruling 96-3p states that the Commissioner will consider a claimant's impairment "severe" if it significantly limits his physical or mental abilities to perform basic work activities. SSR 96-3p.

The plaintiff's burden to show a severe impairment is not an exacting one, however. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). In short, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd 2004).

Notwithstanding, the plaintiff has not met this light burden.

In concluding that the plaintiff's depression was not severe, the ALJ was thorough and specific. The ALJ expressly considered the plaintiff's anxiety and depression, finding

them non-severe for want of any complaint by the plaintiff as to work related limitations attributable to such conditions. (R. at 21.) The ALJ further relied on the conclusion of the State Agency Medical Consultants, who also determined that the plaintiff had "no 'severe' mental impairment" and the absence of any persuasive evidence to the contrary. (R. at 22.)

The plaintiff points to her testimony that she experienced depression with anxiety attacks, crying spells, difficulty with concentrating for more than thirty-five minutes, and fatigue. The plaintiff was prescribed Zoloft 100 milligrams for depression and Xanax for sleep and anxiety. (R. at 108.) The ALJ did not ignore this evidence but reasonably deflected it as not actually suggestive of any actual functional limitations. (See R. at 23.) The ALJ took care to note that there was "no significant observation in the evidence . . . showing that the claimant has been observed to have significant difficulty concentrating" nor that she ever "reported such difficulty." *Id*. The ALJ cited Dr. Frank Sharp's opinion, which found no mental functional limitations. *Id*. The ALJ reiterated that "there is no indication in the other medical evidence, which is extensive, that the claimant reported or was observed to have any difficulty paying attention or maintaining focus." *Id*. He concluded that whatever affect her difficulties with concentration had were so minor as not to affect the mental demands of her work. *Id*.

Although she disagrees with the conclusion, the plaintiff has not actually refuted these bases. The fact that the plaintiff might disagree or even produce conflicting evidence which might have resulted in a contrary decision is of no moment; the ALJ's findings were based on substantial evidence and the Court will not disturb them. *See Blalock*, 483 F.2d at 775; *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984) ("[I]t is immaterial that eight medical witnesses disagreed with the ALJ's conclusion, provided that one such witness gave sufficient probative evidence."). The plaintiff may not simply proclaim her conditions severe, and the ALJ is certainly not required to believe it when she does.

Moreover, the Court rejects that the ALJ did not take the plaintiff's limitations in total. In fact, the above analysis all occurred after the ALJ dismissed the mental and other

6

contested impairments, as non-severe. (See R. at 23-24.) Notwithstanding, the ALJ considered it all in addressing the plaintiff's credibility and RFC. Additionally, and as the defendant argues, the ALJ expressly indicated that "the claimant has not established an impairment, or combination of impairments, which meets or is medically equal to any of the Listed impairments." (R. at 21.) This is sufficient. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 11 th Cir. 2002). The thoroughness of the ALJ's treatment of all the plaintiff's impairments is a more than reasonable indication that their combined effects were reasonably taken into account. *See also Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (where an ALJ considered all of a claimant's impairments, there is nothing to suggest that they were not properly considered in combination); *Gooch v. Sec'y of Health & Humans Servs*, 833 F.2d 589, 592 (6th Cir. 1987) (the fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered).

There is no reversible error.

## II. Treating Physician

The plaintiff next contends that the defendant failed to give controlling weight to the opinions of the plaintiff's treating pulmonologist, Dr. I. Foster Afulukwe. Critically, Dr. Afulukwe completed an Attending Physician's Statement on April 4, 2005, in which he opined that the plaintiff had chronic bronchitis with shortness of breath and chronic cough. (R. at 273-76.) He indicated that she was totally disabled on that date and was unable to say when the disability might lift. *Id*. at 273. He stated that her present limitations consisted of simple activities of daily living. *Id*. He noted that she had a class IV impairment, meaning a moderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity. *Id*. On June 28, 2005, Dr. Afulukwe completed a Return to Work/School Medical Release in which he indicated that the plaintiff was unable to perform all duties from June 28, 2005, until September 27, 2005. (R. at 277).

7

After more than one year of treatment, Dr. Afulukwe completed a Physical Capacities Evaluation dated July 26, 2006, in which he opined that the plaintiff could lift and carry ten pounds occasionally and five pounds frequently during a normal work day; she could sit four hours total in an eight-hour work day; could stand or walk two hours total in an eight hour work day; she should avoid dust, fumes, gases, extremes of temperature, humidity, and other environmental pollutants; she could occasionally perform pushing or pulling movements (arm and/or leg controls); could rarely perform climbing (stairs or ladders) and balancing; could occasionally perform gross manipulation (grasping, twisting, and handling); could frequently perform fine manipulation (finger dexterity); could rarely perform bending and/or stooping movements; could occasionally perform reaching (including overhead); could occasionally operate motor vehicles; could rarely work with or around hazardous machinery. (R. at 283.) Dr. Afulukwe also felt that the plaintiff would miss more than four days per month from work due to her impairments or treatment for her impairments, which included chronic bronchitis associated with chronic obstructive lung disease. *Id*.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

The ALJ dismissed the April 2005 opinion of Dr. Afulukwe as simply an indication that the plaintiff could not return to her prior work, a recommendation not inconsistent with the ALJ's conclusion about her ability to perform past relevant work – that she could not. (R. at 25.) This seems a reasonable interpretation of the evidence, and not one strenuously contested by the plaintiff. In regards to the July 2006 opinion, the ALJ found that Dr. Afulukwe did not provide a detailed explanation for his conclusions. *Id*. The ALJ concluded that he was, therefore, constrained somehow to find, as the only reasonable explanation for the 2006 opinion, that Dr. Afulukwe's conclusion must have been improperly influenced by the plaintiff's "subjective description of her limitations," which the ALJ had already found incredible. (R. at 25-26.) The ALJ, therefore, simply found the opinion meriting "little weight." *Id*. at 26.

For such a comparatively thorough decision, this particular treatment of Dr. Afulukwe's opinion by the ALJ is surprisingly curt. As the plaintiff emphasizes, Dr. Afulukwe had treated the plaintiff for a substantial time, and his assessment of her limitations had arguably developed with credible rhythm. (See R. at 192, 268-72.) Dr. Afulukwe's opinion is not devoid of objective findings. (R. at 268-71.) The ALJ did not address them.

It seems improvident for the ALJ to have so summarily dismissed the opinions of a substantial treating physician without a single opinion of comparable examination in contradiction. The ALJ did not identify any portion of Dr. Afulukwe's opinion which were erroneous, internally inconsistent, or otherwise objectionable. Instead, the ALJ, as a lay observer, could not interpret the basis for the information and so he simply rejected it without further inquiry and upon a conclusion – the plaintiff's input – not readily drawn. The only doctor to address the plaintiff's functional limitations, other than Dr. Afulukwe, was a one-time consultative examiner, Dr. Gbenga Aluko, who saw the plaintiff on October 17, 2007. (R. at 436-38.) By comparison, his medical statement was a check-the-box form which was comparably non-specific to that of Dr. Afulkwe's. (R. at 445-47.)

9

If the ALJ was confused about the basis for the treating physician's rationale, he was free to recontact him. In fact, he was required to do so if he believed "the evidence . . . [was] inadequate for us to determine whether [the plaintiff was] disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e); *see, e.g., Walker v. Harris*, 642 F.2d 712, 714 (4th Cir.1981) (finding error where ALJ did nothing more than take rambling, incoherent testimony of the claimant). Certainly he could not guess, as the ALJ elected to do. (See R. at 25-26.)

The AlJ produced a generally persuasive decision. This fact makes the conclusory rejection of Dr. Afulukwe's opinion all the more unacceptable. Accordingly, the matter should be, regrettably, as it is substantially old, remanded for further treatment. The Court would prefer to award benefits but is unable to interpret the evidence where the ALJ apparently found it incomplete, as a factual matter. Upon remand, the ALJ should again reconsider the weight which should be given to Dr. Afulukwe's treating source opinion.

This recommendation of the undersigned also validates the plaintiff's final objection concerning the hypothetical given to the vocational expert. (Pl. Brief at 26.) To the extent Dr. Afulukwe's opinions are vindicated on remand, obviously the hypothetical to any VE would be differently animated to include the limitations reasonably recommended by it – the treating physician's opinion.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, recommended, for the foregoing reasons, that the Commissioner's decision should be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

    IT IS SO RECOMMENDED

                                      s/Bruce Howe Hendricks
                                      United States Magistrate Judge

April 29, 2010
Greenville, South Carolina