# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rosemary A. Hammonds, ) | Civil Action No. 8:09-172-MBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

On January 3, 2009, Plaintiff Rosemary A. Hammonds filed the within action pursuant to 42 U.S.C. § 205(g) of the Social Security Act, as amended (the "Act") seeking judicial review of a final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Act. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pretrial handling. On July 20, 2009, Plaintiff filed her brief addressing the issues in the case. On August 18, 2009, Defendant filed a brief in opposition to Plaintiff. On April 28, 2010, the Magistrate Judge filed a Report and Recommendation recommending that Defendant's decision to deny benefits be reversed and remanded for reconsideration of the weight that should be given to a treating source opinion. On May 11, 2010, Defendant filed objections to the Report and Recommendation.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the

Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

I. FACTS

On March 22, 2005, Plaintiff filed an application for DIB, alleging disability beginning on March 17, 2005. R. at 55. Plaintiff was forty-five years old at the time of the filing of her DIB application. R. at 55. Plaintiff alleged in her application that she was disabled due to chronic bronchitis, emphysema, and chest pain. R. at 69. Plaintiff has a high school diploma and has past experience in the textiles industry as a tie-end operator and weaver. R. at 70. On May 18, 2005, Plaintiff's claim was denied. R. at 38. On August 29, 2005, Plaintiff's claim was denied again upon reconsideration. R. at 39. On September 27, 2005, Plaintiff timely requested a hearing on her application. R. at 51. On August 17, 2006, a hearing was held before an ALJ at which Plaintiff testified. R. at 452.

At the hearing, Plaintiff submitted medical records as exhibits. R. at 455. These records indicate that Plaintiff first saw Dr. I. Afulukwe ("Dr. Afulukwe"), her treating pulmonologist on January 13, 2005 and that Dr. Afulukwe concluded that Plaintiff had a form of reactive airways dysfunction. R. at 268. Plaintiff saw Dr. Afulukwe for treatment twice in March 2005. R. at 270-72. The medical records include an April 4, 2005 Attending Physician's Statement and Narrative Medical Report completed by Plaintiff's treating pulmonologist Dr. Afulukwe in which he stated that Plaintiff has chronic bronchitis, lung disease, shortness of breath, chest pain, and chronic cough. R. at 193, 273-76. Dr. Afulukwe indicated on April 4, 2005 that Plaintiff was unable to function in her former job setting, and was totally disabled and would remain so for an indeterminate amount of

time. R. at 193, 273. Dr. Afulukwe indicated that Plaintiff was limited to simple activities of daily living and found that she had a Class 4 impairment, which involved "moderate limitation of functional capacity," but "capable of clerical/administrative (sedentary) activity." R. at 273-74. According to the records, Plaintiff received additional treatment in April 2005. R. at 275. Plaintiff's records included a June 28, 2005 medical release signed by Dr. Afulukwe indicating that Plaintiff was unable to perform her job duties from June 28 to September 27, 2005. R. at 277. The records indicate that Plaintiff was seen by Dr. Afulukwe fairly regularly from September 27, 2005 to July 28, 2006. R. at 278, 279, 281, 283.

In a Physical Capacities Evaluation completed by Dr. Afulukwe on July 26, 2006, Dr. Afulukwe opined that because of Plaintiff's "chronic bronchitis associated with chronic obstructive lung disease," in a normal eight hour work day, Plaintiff: 1) could lift 10 pounds occasionally and five pounds frequently; 2) could sit for four hours and stand or walk for two hours; 3) should avoid dust, fumes, gases, extremes of temperature, humidity, and other environmental pollutants; 4) could occasionally perform pushing and pulling movements; 5) could rarely perform climbing (stairs and ladders) and balancing; 6) could occasionally perform gross manipulation (grasping, twisting, and handling); 7) could frequently perform fine manipulation (finger dexterity); 8) could rarely perform bending and/or stooping movements; 9) could rarely perform reaching movements (including overhead); 10) could occasionally operate motor vehicles; and 11) could rarely work with or around hazardous machinery. R. at 283. Dr. Afulukwe also indicated that Plaintiff was likely to be absent from work as a result of her impairment or treatment for more than four days per month. R. at 283.

On October 26, 2006, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. at 302-310. On December 18, 2006 Plaintiff requested review of the

ALJ's decision. R. at 311. On July 25, 2007, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. R. at 312-15. A supplemental hearing was scheduled for October 2, 2007. R. at 30. Plaintiff and Beverly Carlton, a vocational expert testified at the supplemental hearing. R. at 17.

On March 21, 2008, the ALJ issued a decision again finding that Plaintiff is not disabled. R. at 17-29. In evaluating Dr. Afulukwe's opinion, the ALJ stated:

> [N]o treating physician other than Dr. Afulukwe, has described [Plaintiff] as 'disabled' or imposed specific functional limitations consistent with a finding that [Plaintiff] is unable to perform any substantial gainful activity. In Dr. Afulukwe's case, I have considered that in April 2005 he opined that [Plaintiff] was totally disabled and that she was unable to function at her job despite accommodations including use of a mask. However, I have also considered that at the same time, he opined that the claimant was capable of performing sedentary work. Hence, I can only conclude that Dr. Afulukwe meant that [Plaintiff] was unable to perform her past job, rather than that she was incapable of performing any job. . . . In assessing Dr. Afulukwe's opinion I have also considered that later, on July 26, 2006, he opined that [Plaintiff] was capable of sitting for only 4 hours out of a work day, and that she would be expected to be absent from work more than 4 times a month. However, Dr. Afulukwe did not provide a detailed explanation for his conclusion that the claimant could not sit for more than 4 hours during a work day, and, as discussed above, the medical evidence does not show that the claimant reported or was observed to have significant difficulty sitting, or that she had such frequent exacerbations of symptoms that she was rendered unable to perform work related activities more than four times a month. Hence, I can only conclude that Dr. Afulukwe based his opinion of July 26, 2006, on [Plaintiff's] subjective description of her limitations, which . . . are not credible. Consequently, Dr. Afulukwe's opinion of July 26, 2006 merits little weight, and I have so assessed it. Of interest, the balance of Dr. Afulukwe's opinion indicates that, even according to [Plaintiff], she remained able to lift and carry as much as 10 pounds and that she was able to stand or walk for 2 hours out of a work day.

R. at 25-26. The ALJ made the following findings:

> (1) The claimant met the disability insured status requirements of the Act on January 1, 2005 [sic], the alleged date of disability onset, and continues to meet them through the date of this decision.

(2) The claimant has not engaged in substantial gainful activity since the alleged date of disability onset.

(3) The medical evidence establishes that the claimant has "severe" pulmonary disease, allergies and venous insufficiency, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, subpart P, Regulations No. 4. Additionally, for the reasons discussed in the body of this decision the claimant has not met her burden of establishing that she has any other "severe" impairment.

(4) For the reasons discussed in the body of this decision, the testimony regarding the severity of the claimant's impairments and resulting functional limitations was not persuasive.

(5) The claimant retains the residual functional capacity to perform "sedentary" work subject to the additional limitations discussed in the body of this decision [pollution free environment with the freedom to elevate her legs during the day.

(6) The claimant is unable to perform her past relevant work.

(7) The claimant is a "younger individual" and she has a high school education.

(8) Based on an exertional capacity for "sedentary" work, and the claimant's age, education, and work experience, section 404.1569 and Rule 201.21, Table No. 1, Appendix 2, Subpart P. Regulations No. 4 would direct a conclusion of "not disabled."

(9) Even if the claimant's non-exertional limitations do not allow her to perform the full range of "sedentary" work, using the above cited Rule in conjunction with the credible testimony of the vocational expert, a finding that there are a significant number of jobs in the national economy which the claimant could perform is warranted. Examples of such jobs are telephone information clerk and surveillance system monitor.

(10) The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision 20 CFR 404.1520(f).

R. at 28-29. On December 5, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. R. at 8. As a result, the ALJ's decision became the final decision of Defendant. R. at 8.

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## III. THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as: "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The Social Security Act has by regulation reduced the statutory definition of "disability" to a five-step sequential evaluation process. The five steps require a court to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant has an impairment that meets or equals one of the listings in the appropriate appendix; (4) whether the claimant is prevented by the impairment or combination of impairments suffered from engaging in his or her relevant past employment; and (5) whether the claimant has the ability to engage in other gainful activity considering his or her age, education, past relevant experience, and residual functional capacity. *See* 20 C.F.R. § 404.1520 (2007).

An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments, or capable of returning to former work. In such a case, no further inquiry is necessary. If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward with evidence that the claimant can perform alternative work and that such work exists in the national economy. *Harper v. Bowen*, 854 F.2d 678 (4th Cir. 1988);

*Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a vocational expert to testify. 20 C.F.R. § 404.1566. The Commissioner must prove both the claimant's capacity and the job's existence. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

IV. DISCUSSION

Defendant objects to the Magistrate Judge's recommendation of remand based on the ALJ's failure to properly discount Dr. Afulukwe's opinions, contending that the ALJ provided "legitimate reasons for giving little weight to Dr. Afulukwe's opinions" and that the ALJ's decision is supported by substantial evidence. Entry 17 at 3.

Regulations require that all medical opinions in Social Security cases be considered by the Commissioner. 20 C.F.R. § 416.927(b). "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Masto v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R § 416.927). However, ALJ's have "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.* (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If an ALJ's assessment of a person's residual functional capacity ("RFC") "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 61 Fed. Reg. 344-01, 34478.

Regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the

examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d) (2)-(5). Regulations further provide:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1)We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 CFR §§ 404.1512(e).

The court notes that the ALJ provided some reasons for discounting Dr. Afulukwe's opinions including an internal inconsistency in Dr. Afulukwe's April 4, 2005 opinion, and the lack of indication in Dr. Afulukwe's notes that Plaintiff had restrictions on her activities. However, the ALJ went on to assume that Dr. Afulukwe's opinions on Plaintiff's functional restrictions were based solely upon Plaintiff's subjective complaints. While the ALJ is correct that Dr. Afulukwe did not provide a detailed explanation for his conclusions, this does not permit the ALJ to speculate as to the basis of Dr. Afulukwe's conclusions. If Dr. Afulukwe's explanation was inadequate, the ALJ should have recontacted him. *See* 20 CFR §§ 404.1512(e). the court concurs with the Magistrate

9

Judge that the case should be remanded for reconsideration of the weight to be accorded to Dr. Afulukwe's opinions.

Defendant also objects to the Magistrate Judge's suggestion that to the extent Dr. Afulukwe's opinions regarding Plaintiff's functional capacity are credited on remand, any hypothetical given to the vocational expert must include the limitations reasonably recommended by these opinions. Defendant contends that because the Magistrate Judge "reasonably determined that Dr. Afulukwe's opinions were entitled to little weight" no adjustment to the hypothetical given to the vocational expert is necessary. Because the court found above that the case should be remanded for reconsideration of the weight to be given to Dr. Afulukwe's opinion, the court concurs with the Magistrate Judge that any hypothetical put to a vocational expert must be adjusted to the extent that Dr. Afulukwe's opinions are credited on remand.

No specific objections were made to the remainder of the Magistrate Judge's Report and Recommendation. In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Nevertheless, the court has conducted a *de novo* review of the issues and finds no clear error on the face of the record.

## **CONCLUSION**

After reviewing the entire record, the applicable law, the briefs of counsel, the findings and recommendations of the Magistrate Judge, and the Commissioner's objections, this court adopts the recommendation of the Magistrate Judge. The Commissioner's decision is reversed and remanded under 42 U.S.C. § 405(g) for reconsideration of the weight that should be accorded to Dr.

10

Afulukwe's opinion as well as reconsideration of the proper hypothetical to be given to the vocational expert.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

August 26, 2010
Columbia, South Carolina